

## IN THE COURT OF COMMON PLEAS
## CLERMONT COUNTY, OHIO

STEPHANIE A. SMITH
2535 US Highway 50, Apt. 71
Batavia, Ohio 45103

      Plaintiff,

      v.

MERCY HEALTH-CLERMONT
HOSPITAL, LLC
3000 Hospital Drive
Batavia, OH 45103

      Serve Also Statutory Agent:
      Claire G. Combs
      1701 Mercy Health Place
      Cincinnati, OH 45237

And

US ACUTE CARE SOLUTIONS
d/b/a ACUTE CARE SPECIALIST, INC.
4535 Dressler Road NW
Canton, OH 44718

      Serve Statutory Agent:
      CSC-Lawyers Incorporating
      Service
      50 W. Broad Street, Suite 1800
      Columbus, OH 43215

And

SAMANTHA YELLEY, DO
4535 Dressler Road NW
Canton, OH 44718

And

HEALTHSOURCE OF OHIO
FAMILY PRACTICE
2055 Hospital Drive, Suite 130
Batavia, OH 45103

2020 CVA 00889 JUDGE BROCK

CASE NO.: _____

# JUDGE BROCK

JUDGE _____

**COMPLAINT WITH AFFIDAVITS
OF MERIT, JURY DEMAND AND
MOTION FOR TIME EXTENSION
TO FILE ADDITIONAL
AFFIDAVITS OF MERIT
ATTACHED HERETO**

2020 OCT 23 PM 3:24
BARBARA A. WIEDENBEIN
CLERK OF COMMON PLEAS COURT
CLERMONT COUNTY, OH
FILED

EXHIBIT A

|  |  |
|---|---|
| **Serve Also Statutory Agent:** | : |
| **Kimberly Patton** | : |
| **424 Wards Corner Road** | : |
| **Loveland, OH 45140** | : |
|  | : |
| **And** | : |
|  | : |
| **ROGER CHANG, M.D.** | : |
| **OF HEALTHSOURCE OF** | : |
| **OHIO FAMILY PRACTICE** | : |
| **2055 Hospital Drive, Suite 130** | : |
| **Batavia, OH 45103** | : |
|  | : |
| **And** | : |
|  | : |
| **LABCORP DUBLIN** | : |
| **d/b/a Laboratory Corporation of** | : |
| **America** | : |
| **6370 Wilcox Road** | : |
| **Dublin, OH 43016-1269** | : |
|  | : |
| **Serve Statutory Agent:** | : |
| **Corporation Service Company** | : |
| **50 West Broad Street** | : |
| **Suite 1330** | : |
| **Columbus, OH 43215** | : |
|  | : |
| **And** | : |
|  | : |
| **JANE AND/OR JOHN DOE #1-5** | : |
| **EMPLOYEES, AGENTS AND/OR** | : |
| **SERVANTS WHOSE IDENTITIES** | : |
| **AND ADDRESSES ARE UNKNOWN** | : |
|  | : |
| **Defendants.** | : |

Plaintiff, Stephanie A. Smith, by and through counsel, hereby states her Complaint against Defendants as follows:

## PARTIES & JURISDICTION

1.     Plaintiff, Stephanie A. Smith, is a resident of Clermont County, Ohio.

2

2.      Plaintiff brings all claims herein.

3.      Plaintiff brings this claim as a result of the negligence of one or more of the Defendants.

4.      Plaintiff Stephanie Smith brings her own claims for medical malpractice individually as a result of the negligence of one or more of the Defendants.

5.      Defendant Mercy Health – Clermont Hospital, LLC (hereinafter "Mercy Clermont") is an Ohio corporation with a principal place of business in Clermont County, Ohio and doing business as a medical provider in Batavia, Clermont County, Ohio.

6.      Defendant US Acute Care Solutions d/b/a Acute Care Specialist, Inc. is an Ohio corporation or a similar entity with a principal place of business in Clermont County, Ohio and doing business as a medical provider in Clermont County, Ohio.

7.      Defendant Samantha Yelley, DO is an emergency medicine physician licensed to practice in the State of Ohio and provide medical care in Clermont County, Ohio.

8.      Defendant Healthsource of Ohio Family Practice (hereinafter "Healthsource") is an Ohio corporation or a similar entity with a principal place of business in Clermont County, Ohio and doing business as a medical provider in Clermont County, Ohio.

9.      Defendant Roger Chang, M.D. is an internal medicine physician licensed to practice medicine in the State of Ohio and provided medical care in Clermont County, Ohio.

10.      Defendant Roger Chang, M.D. is employed and/or an ostensible agent of Healthsource of Ohio Family Practice.

11.      Defendant Roger Chang, M.D. is also employed by Healthsource of Ohio Family Practice, located in Batavia, Clermont County, Ohio.

3

12.     Defendant Roger Chang, M.D. is a federal employee of Defendant, Healthsource of Ohio Family Practice, which is a Federally-Funded Clinic and medical provider in Clermont County, Ohio.

13.     Defendant LabCorp Dublin d/b/a Laboratory Corporation of America (hereinafter "LabCorp Dublin") is an Ohio Corporation or a similar entity with a principal place of business in Franklin County, Ohio and doing business as a medical provider in Clermont County, Ohio.

14.     Defendants John and/or Jane Doe #1-5 provided care and treatment to Plaintiff in Clermont County, Ohio.

15.     Jurisdiction and venue are appropriate to all parties and causes of action stated herein.

16.     Pursuant to Ohio Civil Rule 10(D)(2) Affidavits of Merit are attached as Exhibit A along with a Motion for Time Extension to File Additional Affidavits of Merit and Entry as Exhibit B.

**FACTUAL BACKGROUND**

17.     Plaintiff hereby incorporates by reference the previous paragraphs as if fully rewritten herein.

18.     On or about October 26, 2019, Plaintiff Stephanie Smith presented in the Emergency Department of Mercy Hospital Clermont for left knee pain with edema, pain score of 5/10 mostly noted over anterior aspect of the left knee with associated swelling.

19.     On or about October 26, 2019, x-ray revealed probable knee joint effusion.

20.     On or about October 26, 2019, Plaintiff Stephanie Smith was placed in a knee immobilizer, prescribed Prednisolone, and instructed to follow up with Defendant Dr. Chang for Warfarin dosage, and discharged home.

4

21.     On or about October 31, 2019, Plaintiff Stephanie Smith visited Defendant Dr. Chang for left knee pain, swelling, and routine follow up.

22.     On or about October 31, 2019, Plaintiff Stephanie Smith was taking 2.5mg of Warfarin, as prescribed by Defendant Dr. Chang.

23.     On or about October 31, 2019, Defendant John and/or Jane Doe #1-5 attempted to draw blood from Plaintiff Stephanie Smith's right arm.

24.     On or about October 31, 2019, multiple and aggressive attempts were made by Defendant John and/or Jane Doe #1-5 to obtain a blood draw from Plaintiff's right arm.

25.     On or about October 31, 2019, Defendant John and/or Jane Doe #1-5 were unsuccessful in obtaining blood from Plaintiff's right arm and advised her to go home.

26.     On or about October 31, 2019, despite Plaintiff being in pain and her arm being sore, Defendant Dr. Chang and/or Defendant John and/or Jane Doe #1-5 did not evaluate Plaintiff for her complaints of pain and discomfort.

27.     On or about October 31, 2019, Plaintiff noticed a hard knot in her arm where Defendants had made prior aggressive attempts to retrieve blood.

28.     On or about October 31, 2019, the knot in Plaintiff Stephanie Smith's arm got significantly worse and became increasingly painful.

29.     On or about October 31, 2019, Plaintiff Stephanie Smith presented to the Emergency Department of Defendant Mercy Health-Clermont Hospital, LLC.

30.     On or about October 31, 2019, Plaintiff was evaluated by Samantha Yelley, DO in the emergency department of Mercy Health-Clermont Hospital, LLC for right arm swelling and pain.

31.     On examination, Plaintiff had significant edema and ecchymosis over the medial/ulnar aspect going all the way into her palm, tight upper and lower compartments, and faintly palpable radial pulse.

32.     On examination, Plaintiff also had a firm indurated area over the left antecubital (AC) region with ecchymosis.

33.     On or about October 31, 2019, there was difficulty obtaining IV (intravenous) access hence a peripheral venous access was done using ultrasound guidance.

34.     On or about October 31, 2019, pain medications were administered and CTA (CT Angiography) of upper right extremity and coagulation profile was ordered.

35.     The CTA revealed the following: Active extravasation along the distal/downstream brachial artery at the level of antecubital fossa with intramuscular hematoma formation involving the anterior compartment/brachialis. Contrast opacification distal to brachial artery, including the ulnar, radial, palmar and dorsal hand arteries.

36.     On or about October 31, 2019, the INR was found to be 12.25(H) and PTT was 111.1 (H).

37.     Plaintiff was administered Vitamin K and Tranexamic acid (TXA).

38.     On or about October 31, 2019, four units of Fresh frozen plasma (FFP) were ordered, however only two units could be administered as there was delay in thawing the fresh frozen plasma at Defendant Mercy Health-Clermont Hospital, LLC.

39.     On or about October 31, 2019, limb elevation and inpatient vascular surgery consult was recommended. Upon recheck, she still had less than 2-second cap refill, and radial and ulnar pulsations were visible on Ultrasound/Doppler.

40.     On or about October 31, 2019, Dr. Yelley diagnosed her with injury of right brachial artery at high risk for compartment syndrome and intramuscular hematoma which is a medical emergency.

41.     On or about November 1, 2019, at around 0530 hours, Ms. Smith started getting some paresthesia, tingling in her right distal digits with worsening edema.

42.     On or about November 1, 2019, it was suggested that Plaintiff be transferred to Mercy Health-Anderson Hospital, LLC emergency room for further management.

43.     On or about November 1, 2019, there were significant delays in Plaintiff's transfer to Mercy Health-Anderson Hospital, LLC.

44.     On or about November 1, 2019, Plaintiff's edema and ecchymosis were significantly worsening.

45.     On or about November 1, 2019, there was difficulty and delays in obtaining ambulance transportation by Defendant Mercy Health-Clermont Hospital, LLC.

46.     On or about November 1, 2019, Plaintiff was administered her second unit of fresh frozen plasma (FFP) during transport to Mercy Health-Anderson Hospital, LLC.

47.     On or about November 1, 2019, at 08:59 hours, Plaintiff was seen by Robert Hunt, CNP and Brandon Price, MD at the emergency department of Mercy Health-Anderson Hospital, LLC.

48.     Upon arrival, Plaintiff had mild discomfort to her right arm and left knee. On examination, there was a large amount of swelling noted to the right arm with ACE wrap in place.

49.     On or about November 1, 2019, Plaintiff was admitted to Mercy Health-Anderson Hospital, LLC.

50.     On or about November 1, 2019, Plaintiff underwent vascular surgery consultation with Amy Lipscomb, MD for her right brachial artery injury. Physical examination revealed swollen, taut and ecchymotic forearm and hand with some early blistering of medial volar proximal region and difficulty in flexing and extending Plaintiff's wrist and elbow.

51.     On or about November 1, 2019, Plaintiff was diagnosed with right brachial artery injury with active extravasation and acute compartment syndrome right arm secondary to hemorrhage.

52.     On or about November 1, 2019 an additional unit of fresh frozen plasma and surgical intervention were recommended for Plaintiff.

53.     On or about November 1, 2019, Ms. Smith underwent right brachial artery exploration and repair by Dr. Lipscomb at Mercy Health-Anderson Hospital, LLC.

54.     On or about November 1, 2019, all compartments on the volar part of the upper arm and the forearm were found to be tight. Dr. Sorger performed carpel tunnel release, fasciotomy of the volar forearm and right upper arm followed by placement of wound VAC (Vacuum Assisted Closure).

55.     On or about November 2, 2019, Plaintiff was evaluated by Richard Fries, M.D. with complaints of pain throughout her right arm. On examination, there was oozing consistent with fasciotomy.

56.     On or about November 2, 2019, Plaintiff was advised to undergo deep vein thrombosis (DVT) prophylaxis and analgesics for post-operative pain.

57.     On or about November 3, 2019, Plaintiff underwent irrigation and excision debridement, primary closure of upper arm wound, and wound VAC change with Dr. Sorger.

58.    On or about November 4, 2019, Plaintiff was seen for continued pain and hand swelling. On examination, Plaintiff had a painful range of motion in her right extremity.

59.    On or about November 4, 2019, it was recommended Plaintiff undergo painful debridement and skin grafting. Pain medications and Warfarin were continued.

60.    On or about November 4, 2019, Plaintiff underwent excisional debridement of the right arm followed by split-thickness skin graft harvest from her right thigh. The graft was placed in the right volar forearm area along with wound VAC for suction.

61.    On or about November 5, 2019, Plaintiff was evaluated, and it was recommended Plaintiff undergo another exploration.

62.    On or about November 6, 2019, Plaintiff was evaluated for wound care and was advised to follow up with wound care and suggested to transfer to a skilled nursing facility on discharge.

63.    On November 7, 2019, Plaintiff was evaluated by Physical Therapy (PT) and Occupational Therapy (OT) for strengthening, balance training, and functional mobility training. PT and OT were recommended 3-5 times a week as a result of her injuries.

64.    Plaintiff continued to have extreme pain, swelling and tightness in her right arm as a result of her injuries.

65.    On or about November 9, 2019, Plaintiff was discharged from Mercy Health-Anderson Hospital, LLC.

66.    Plaintiff has permanent and substantial scarring and disfigurement of her right arm and hand.

67.    Plaintiff has suffered a total loss of use of her right arm and hand as a result of her injuries.

## COUNT I - NEGLIGENCE OF MERCY HEALTH-CLERMONT HOSPITAL, LLC

68.　Plaintiff hereby incorporates by reference the previous paragraphs as if fully rewritten herein.

69.　Defendant Mercy Health-Clermont Hospital, by and through its agents, employees, and/or servants, including but not limited to the nursing staff, was negligent and deviated from the acceptable standards of care in failing to timely respond to Plaintiff's declining condition and to follow the appropriate chain of command.

70.　Defendant Mercy Health-Clermont Hospital is vicariously liable for the acts and/or omissions of its agents, employees and/or servants, under the doctrines of respondeat superior and/or apparent agency or agency by estoppel for the negligence of its nurses, healthcare providers, and physicians caring for Plaintiff.

71.　Defendant Mercy Health-Clermont Hospital was negligent in its failure to properly train its nurses, doctors, and staff how to properly recognize, respond to, prevent, and treat compartment syndrome.

72.　Defendant Mercy Health-Clermont Hospital was negligent in its failure to establish policies and procedures regarding compartment syndrome including but not limited to medical management, timely recognition, and proper care and treatment.

73.　The negligence of Defendant Mercy Health-Clermont Hospital was a direct and proximate cause of Plaintiff's injuries.

74.　As a direct and proximate result of Defendant Mercy Health-Clermont Hospital's negligence, Plaintiff suffered profound significant physical pain and suffering, and lost permanent use of her right arm and hand.

75.     As a direct and proximate result of Defendant Mercy Health-Clermont Hospital's negligence, Plaintiff suffered and will continue to suffer significant emotional pain and suffering and mental anguish as a direct and/or proximate result of her injuries.

76.     As a direct and proximate result of Defendant Mercy Health-Clermont Hospital's negligence, Plaintiff has incurred related medical expenses including past and future medical expenses.

77.     The negligence of Defendant Mercy Health-Clermont Hospital directly, and by and through its employees, servants and/or agents, was a direct and proximate cause of Plaintiff's injuries, including but not limited to: Plaintiff's pain and suffering, mental anguish, medical expenses, emotional distress as a result of the loss of use of Plaintiff's right arm and hand.

### COUNT II – NEGLIGENCE OF DEFENDANT US ACUTE CARE SOLUTIONS d/b/a ACUTE CARE SPECIALIST, INC.

78.     Plaintiff hereby incorporates by reference the previous paragraphs as if fully rewritten herein.

79.     The nurses, healthcare providers, and physicians responsible for the care of Plaintiff, including but not limited to Defendant Dr. Yelley were employees, agents and/or servants of Defendant US Acute Care Solutions d/b/a Acute Care Specialist, Inc. who acted within the scope of their employment and with the actual/apparent authority of Defendant US Acute Care Solutions d/b/a Acute Care Specialist, Inc.

80.     The nurses, healthcare providers, and physicians responsible for the care of Plaintiff, including but not limited to Defendant Dr. Yelley deviated from the acceptable standards of care in their failure to adequately treat, assess, evaluate, and diagnose Plaintiff on or about October 31, 2019.

11

81. The nurses, healthcare providers, and physicians responsible for the care of Plaintiff, including but not limited to Defendant Dr. Yelley, deviated from the acceptable standards of care in their failures to communicate with other health care providers, to invoke the chain of command, and to advocate on Plaintiff Stephanie Smith's behalf during her medical treatment.

82. The nurses, healthcare providers, and physicians responsible for the care of Plaintiff, including but not limited to Defendant Dr. Yelley, deviated from the acceptable standards of care in their failure to recognize and appreciate the increasing risk of including but not limited to compartment syndrome and brachial artery injury.

83. The nurses, healthcare providers, and physicians responsible for the care of Plaintiff, including but not limited to Defendant Dr. Yelley deviated from the acceptable standards of care in failing to inform Plaintiff of her risk for developing compartment syndrome and/or brachial artery injury.

84. Defendant US Acute Care Solutions d/b/a Acute Care Specialist, Inc. is vicariously liable under the doctrines of respondeat superior and/or apparent agency or agency by estoppel for the negligence of its nurses, healthcare providers, and physicians caring for Plaintiff.

85. Defendant US Acute Care Solutions d/b/a Acute Care Specialist, Inc. was negligent in its failure to properly train its nurses, doctors, and staff how to timely recognize, respond to, prevent, and treat compartment syndrome.

86. Defendant US Acute Care Solutions d/b/a Acute Care Specialist, Inc. was negligent in its failure to establish policies and procedures regarding compartment syndrome and/or brachial artery injury.

87. The negligence of Defendant US Acute Care Solutions d/b/a Acute Care Specialist, Inc. was a direct and proximate cause of Plaintiff's injuries.

12

88.　　As a direct and proximate result of Defendant US Acute Care Solutions d/b/a Acute Care Specialist, Inc.'s negligence, Plaintiff suffered profound significant physical pain and suffering and lost permanent use of her right arm and hand.

89.　　As a direct and proximate result of Defendant US Acute Care Solutions d/b/a Acute Care Specialist, Inc.'s negligence, Plaintiff suffered and will continue to suffer significant emotional pain and suffering, mental anguish, and an overwhelming loss of enjoyment of life as a direct and/or proximate result of her injuries.

90.　　As a direct and proximate result of Defendant US Acute Care Solutions d/b/a Acute Care Specialist, Inc.'s negligence, Plaintiff has incurred related medical expenses including past and future medical expenses.

91.　　The negligence of Defendant US Acute Care Solutions d/b/a Acute Care Specialist, Inc. directly and by and through its employees, servants and/or agents was a direct and proximate cause of Plaintiff's injuries, including but not limited to: Plaintiff's pain and suffering, mental anguish, medical expenses, emotional distress as a result of the loss of use of Plaintiff's right arm and hand.

## COUNT III – NEGLIGENCE OF DEFENDANT SAMANTHA YELLEY, DO

92.　　Plaintiff hereby incorporates by reference the previous paragraphs as if fully rewritten herein.

93.　　Defendant Dr. Yelley deviated from the acceptable standards of care and was negligent in her failure to timely and adequately evaluate, assess, and diagnose Plaintiff's compartment syndrome.

94.     Defendant Dr. Yelley deviated from the acceptable standards of care and was negligent in her failure to adequately and timely evaluate, assess, and advise Plaintiff as to the risk of compartment syndrome in her right arm.

95.     Defendant Dr. Yelley deviated from the acceptable standards of care and was negligent in her failure to timely transfer Plaintiff to a medical facility that was capable of performing emergency surgery on Plaintiff.

96.     The negligence of Defendant Dr. Yelley was a direct and proximate cause of Plaintiff's injuries.

97.     As a direct and proximate result of Defendant Dr. Yelley's negligence, Plaintiff suffered profound significant physical pain and suffering, and lost permanent use of her right arm and hand.

98.     As a direct and proximate result of Defendant Dr. Yelley's negligence, Plaintiff suffered and will continue to suffer significant emotional pain and suffering, mental anguish, and an overwhelming loss of enjoyment of life.

99.     As a direct and proximate result of Defendant Dr. Yelley's negligence, Plaintiff has incurred related medical expenses including past and future medical expenses.

100.    The negligence of Defendant Dr. Yelley was a direct and proximate cause of Plaintiff's injuries, including but not limited to: Plaintiff's pain and suffering, mental anguish, medical expenses, emotional distress as a result of the loss of use of Plaintiff's right arm and hand.

## COUNT IV - NEGLIGENCE OF DEFENDANT HEALTHSOURCE OF OHIO FAMILY PRACTICE

101.    Plaintiff hereby incorporates by reference the previous paragraphs as if fully rewritten herein.

14

102. The nurses, healthcare providers, and physicians responsible for the care of Plaintiff, including but not limited to Defendant Dr. Chang were employees, agents and/or servants of Defendant Healthsource of Ohio Family Practice who acted within the scope of their employment and with the actual/apparent authority of Defendant Healthsource of Ohio Family Practice.

103. The nurses, healthcare providers, and physicians responsible for the care of Plaintiff, including but not limited to Defendant Dr. Chang deviated from the acceptable standards of care in their failure to adequately treat, assess, evaluate, and diagnose Plaintiff during and after her blood draw on or about October 31, 2019.

104. The nurses, healthcare providers, and physicians responsible for the care of Plaintiff, including but not limited to Defendant Dr. Chang, deviated from the acceptable standards of care in their failures to communicate with other health care providers, to invoke the chain of command, and to advocate on Plaintiff Stephanie Smith's behalf during her medical treatment.

105. The nurses, healthcare providers, and physicians responsible for the care of Plaintiff, including but not limited to Defendant, Dr. Chang, deviated from the acceptable standards of care in their failure to recognize and appreciate the increasing risk of including but not limited to compartment syndrome and brachial artery injury.

106. The nurses, healthcare providers, and physicians responsible for the care of Plaintiff, including but not limited to Defendant Dr. Chang deviated from the acceptable standards of care in failing to inform Plaintiff of her risk for developing compartment syndrome and/or brachial artery injury.

15

107. Defendant Healthsource of Ohio Family Practice is vicariously liable under the doctrines of respondeat superior and/or apparent agency or agency by estoppel for the negligence of its nurses, healthcare providers, and physicians caring for Plaintiff.

108. Defendant Healthsource of Ohio Family Practice was negligent in its failure to properly train its nurses, doctors, and staff how to properly recognize, respond to, prevent, and treat risk of hematoma/seroma resulting from inadequate prescribing and monitoring of Warfarin.

109. Defendant Healthsource of Ohio Family Practice was negligent in its failure to establish policies and procedures regarding compartment syndrome and/or brachial artery injury.

110. The negligence of Defendant Healthsource of Ohio Family Practice was a direct and proximate cause of Plaintiff's injuries.

111. As a direct and proximate result of Defendant Healthsource of Ohio Family Practice's negligence, Plaintiff suffered profound significant physical pain and suffering and lost permanent use of her right arm and hand.

112. As a direct and proximate result of Defendant Healthsource of Ohio Family Practice's negligence, Plaintiff suffered and will continue to suffer significant emotional pain and suffering, mental anguish, and an overwhelming loss of enjoyment of life as a direct and/or proximate result of her injuries.

113. As a direct and proximate result of Defendant Healthsource of Ohio Family Practice's negligence, Plaintiff has incurred related medical expenses including past and future medical expenses.

114. The negligence of Defendant Healthsource of Ohio Family Practice directly and by and through its employees, servants and/or agents was a direct and proximate cause of Plaintiff's

injuries, including but not limited to: Plaintiff's pain and suffering, mental anguish, medical expenses, emotional distress as a result of the loss of use of Plaintiff's right arm and hand.

## COUNT V – NEGLIGENCE OF ROGER CHANG, M.D.

115.    Plaintiff hereby incorporates by reference the previous paragraphs as if fully rewritten herein.

116.    Defendant Dr. Chang deviated from the acceptable standards of care and was negligent in his failure to adequately evaluate, assess, and diagnose Plaintiff's brachial artery injury.

117.    Defendant Dr. Chang deviated from the acceptable standards of care and was negligent in his failure to adequately evaluate, assess, and advise Plaintiff as to the risk of developing a compartment syndrome in her right arm.

118.    Defendant Dr. Chang deviated from the acceptable standards of care and was negligent in his failure to obtain INR and begin urgent correction of an excessive coagulopathic state of Plaintiff.

119.    As a direct and proximate result of Defendant Dr. Chang's negligence, Plaintiff suffered right brachial artery hemorrhage.

120.    Defendant Dr. Chang deviated from the acceptable standards of care and was negligent in his failure to properly prescribe and/or monitor dosing of warfarin and in the failure to intervene when necessary.

121.    As a direct and proximate result of Defendant Dr. Chang's negligence, Plaintiff suffered from a life-threatening degree of anticoagulation.

122.    Defendant Dr. Chang deviated from the acceptable standards of care and was negligent in his failure to properly obtain blood during Plaintiff's visit to Defendant Dr. Chang's office on or about October 31, 2019.

123.    The negligence of Defendant Dr. Chang was a direct and proximate cause of Plaintiff's injuries.

124.    As a direct and proximate result of Defendant Dr. Chang's negligence, Plaintiff suffered injury to the right brachial artery.

125.    As a direct and proximate result of Defendant Dr. Chang's negligence, Plaintiff suffered profound significant physical pain and suffering, and lost permanent use of her right arm and hand.

126.    As a direct and proximate result of Defendant Dr. Chang's negligence, Plaintiff suffered and will continue to suffer significant emotional pain and suffering, mental anguish, and an overwhelming loss of enjoyment of life.

127.    As a direct and proximate result of Defendant Dr. Chang's negligence, Plaintiff has incurred related medical expenses including past and future medical expenses.

128.    The negligence of Defendant Dr. Chang was a direct and proximate cause of Plaintiff's injuries, including but not limited to: Plaintiff's pain and suffering, mental anguish, medical expenses, and emotional distress as a result of the loss of use of Plaintiff's right arm and hand.

129.    The negligence of Defendant Dr. Chang directly, and by and through his employees, servants and/or agents, was a direct and proximate cause of Plaintiff's injuries, including but not limited to: Plaintiff's pain and suffering, mental anguish, medical expenses, emotional distress as a result of the loss of use of Plaintiff's right arm and hand.

## COUNT VI – NEGLIGENCE OF LABCORP DUBLIN d/b/a LABORATORY CORPORATION OF AMERICA

130. Plaintiff hereby incorporates by reference the previous paragraphs as if fully rewritten herein.

131. The nurses, healthcare providers, and physicians responsible for the care of Plaintiff, including but not limited to Jane and/or John Doe #1-5, were employees, agents and/or servants of Defendant LabCorp Dublin d/b/a Laboratory Corporation of America who acted within the scope of their employment and with the actual/apparent authority of Defendant LabCorp Dublin.

132. The nurses, healthcare providers, and physicians responsible for the care of Plaintiff, including but not limited to Jane and/or John Doe #1-5, deviated from the acceptable standards of care in their failure to adequately treat, assess, evaluate, and diagnose Plaintiff after her failed blood draw.

133. The nurses, healthcare providers, and physicians responsible for the care of Plaintiff, including but not limited to Defendant Jane and/or John Doe #1-5 deviated from the acceptable standards of care in their failures to communicate with other health care providers and in their failure to advocate for Plaintiff Stephanie Smith.

134. The nurses, healthcare providers, and physicians responsible for the care of Plaintiff, including but not limited to Defendant Jane and/or John Doe #1-5, deviated from the acceptable standards of care in their failure to recognize and appreciate the increasing risk of the potential to develop compartment syndrome as a result of injuries to the brachial artery.

135. The nurses, healthcare providers, and physicians responsible for the care of Plaintiff, including but not limited to Defendant Jane and/or John Doe #1-5, deviated from the acceptable standards of care in their failure to properly treat Plaintiff.

136. Defendant LabCorp Dublin d/b/a Laboratory Corporation of America is vicariously liable under the doctrines of respondeat superior and/or apparent agency or agency by estoppel for the negligence of its nurses, healthcare providers, and physicians caring for Plaintiff.

137. Defendant LabCorp Dublin d/b/a Laboratory Corporation of America was negligent in its failure to properly train its nurses, doctors, and staff how to properly recognize, respond to, prevent, and treat compartment syndrome.

138. Defendant LabCorp Dublin d/b/a Laboratory Corporation of America was negligent in its failure to establish policies and procedures regarding blood draws, prevention of arterial injuries, and/or compartment syndrome.

139. The negligence of Defendant LabCorp Dublin d/b/a Laboratory Corporation of America was a direct and proximate cause of Plaintiff's injuries.

140. As a direct and proximate result of Defendant LabCorp Dublin d/b/a Laboratory Corporation of America's negligence, Plaintiff suffered injury to the right brachial artery.

141. As a direct and proximate result of Defendant LabCorp Dublin d/b/a Laboratory Corporation of America's negligence, Plaintiff suffered profound significant physical pain and suffering, and lost permanent use of her right arm and hand.

142. As a direct and proximate result of Defendant LabCorp Dublin d/b/a Laboratory Corporation of America's negligence, Plaintiff suffered and will continue to suffer significant emotional pain and suffering, mental anguish, and an overwhelming loss of enjoyment of life as a direct and/or proximate result of her injuries.

143. As a direct and proximate result of Defendant LabCorp Dublin d/b/a Laboratory Corporation of America's negligence, Plaintiff has incurred related medical expenses including past and future medical expenses.

144.    The negligence of Defendant LabCorp Dublin d/b/a Laboratory Corporation of America was a direct and proximate cause of Plaintiff's injuries, including but not limited to: Plaintiff's pain and suffering, mental anguish, medical expenses, and emotional distress as a result of the loss of use of Plaintiff's right arm and hand.

145.    The negligence of Defendant LabCorp Dublin d/b/a Laboratory Corporation of America directly, and by and through his employees, servants and/or agents, was a direct and proximate cause of Plaintiff's injuries, including but not limited to: Plaintiff's pain and suffering, mental anguish, medical expenses, and emotional distress as a result of the loss of use of Plaintiff's right arm and hand.

## COUNT VII – NEGLIGENCE OF JANE AND/OR JOHN DOE

146.    Plaintiff hereby incorporates by reference the previous paragraphs as if fully rewritten herein.

147.    Defendants Jane and/or John Doe, whose names and identities are unknown, are physicians, technicians, and/or other staff who were responsible for Plaintiff Stephanie Smith's medical treatment in relation to hematoma/seroma, neuropsychological deficits, prescriptions and/or monitoring of warfarin doses, failed blood drawing attempt on or about 10/31/2019, failed recognition of arterial injury, and/or the maintenance of acceptable MAP during the three surgical procedures from on or about 11/1/2019 to on or about 11/4/2019.

148.    Defendants Jane and/or John Doe were negligent and breached the standard of care in failing to perform adequate study and/or performance and/or intervention when they knew or should have known that inadequate monitoring of a brachial artery injury would lead to compartment syndrome.

149. As a direct and proximate result of Jane and/or John Doe's negligence, Stephanie Smith suffered profound and permanent injuries.

150. As a direct and proximate result of Jane and/or John doe's negligence, Stephanie Smith has incurred expenses for medical care to date and will continue to incur expenses for medical care throughout her lifetime.

151. The negligence of Jane and/or John Doe was a direct and proximate cause of Plaintiff's injuries, including but not limited to: Plaintiff's pain and suffering, mental anguish, medical expenses, and emotional distress.

## COUNT VIII – LACK OF INFORMED CONSENT

152. Plaintiff hereby incorporates by reference the previous paragraphs as if fully rewritten herein.

153. Defendants failed to disclose to Plaintiff, Stephanie Smith, the material risks and dangers inherently and potentially involved with respect to conditions known to be associated with compartment syndrome and that it is a medical emergency.

154. Had Plaintiff, Stephanie Smith, known of the material risks and dangers inherent and incidental to compartment syndrome she would have chosen a different medical provider and/or opted for more adequate and timely medical treatment for her compartment syndrome.

155. The unrevealed risks and dangers, which should have been disclosed by the Defendants, actually materialized and are the direct and proximate cause of Plaintiff, Stephanie Smith's permanent and substantial physical injuries.

## COUNT IX – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

156. Plaintiff hereby incorporates by reference the previous paragraphs as if fully rewritten herein.

157.    Plaintiff Stephanie Smith contemporaneously endured the negligent treatment by Defendants and subsequent pain and suffering.

158.    As a direct and proximate result of Defendants' negligence, Plaintiff Stephanie Smith sustained serious emotional distress, grief, and mental pain and suffering.

## COUNT X - PUNITIVE DAMAGES

159.    Plaintiff hereby incorporates by reference the previous paragraphs as if fully rewritten herein.

160.    Defendants' negligence, including but not limited to, the delay in treatment and failure to inform Plaintiff of the risks and inherent dangers involved in failing to treat, diagnose, and prevent hematoma/seroma constitutes a conscious disregard for the rights and safety of other persons that had a great probability of causing substantial harm and which did, in fact, cause substantial harm.

WHEREFORE Plaintiff demands judgment against Defendants jointly and severally in an amount that will fully and fairly compensate her for all of her injuries and damages, past, present and future, punitive damages, court costs, attorney's fees and any such other further relief as the Court might find appropriate.

Respectfully submitted,

*/s/ Lindsay A. Lawrence*
Lindsay A. Lawrence, Esq. (#0085880)
**RITTGERS & RITTGERS**
3734 Eastern Avenue
Cincinnati, OH 45226
(513) 932-2115
(513) 934-2201- facsimile
lindsay@rittgers.com
*Counsel for Plaintiff*

*And*

/s/ T. David Burgess
T. David Burgess, Esq. (#0029188)
Kristopher Burgess, Esq. (#0095220)
T. DAVID BURGESS CO., LPA
110 N. Third Street
Williamsburg, OH 45176
david@theburgessfirm.com
kristopher@theburgessfirm.com
*Co-Counsel for Plaintiff*

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all matters herein.

/s/ Lindsay A. Lawrence
Lindsay A. Lawrence, Esq. (#0085880)

## REQUEST FOR SERVICE

TO THE CLERK:

Please issue certified mail service on all persons identified in the caption via U.S. certified mail, return receipt requested.

/s/ Lindsay A. Lawrence
Lindsay A. Lawrence, Esq. (#0085880)